UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| LUCY WHITT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-174-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| WAL-MART STORES EAST, L.P., | ) | **ORDER** |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WAL-MART STORES EAST, L.P., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW CASEY, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Lucy Whitt ("Whitt"), has suffered a great deal. She was assaulted and abducted in South Williamson, Kentucky, and then taken to a nearby town where she was raped. However, the only question before this Court is whether she can recover from the defendant, Wal-Mart Stores East, L.P. ("Walmart"), since she was assaulted and abducted in its parking lot. Given the evidence presented, Walmart could not have foreseen her tragedy. Walmart's motion for summary must be granted.

## BACKGROUND

The following facts are undisputed:

Whitt is a fifty-nine year old woman from Naugatuck, West Virginia. R. 62, Ex. A ("Whitt Dep.") at 4, 12. She went to the South Williamson Walmart during the early morning hours of December 14, 2006. *Id.* at 65–67. It was still dark when she arrived at the store at around 6:30 a.m. *Id.* at 71. She parked near the front of the store and began making entries in her checkbook. *Id.* at 71–72. She remembers a car was parked in front of her, but she does not remember a car parked on either side of her. *Id.* at 71.

After a few minutes, the third-party defendant, Matthew Casey ("Casey"), walked up to her window and knocked. *Id.* at 65. She rolled down her window, and Casey asked her what time it was. *Id.* She looked at her watch and told him it was 6:30. *Id.* at 75. He said he was waiting for his sister who was inside the store shopping, and then he walked to the front of the car. *Id.* at 65-66. He came back to her window and again asked her what time it was. *Id.* at 66. She told him again and had started to roll up her window when Casey punched her in the face. *Id.* at 66, 76. He opened her door and forced her into the passenger seat. *Id.* at 66. He grabbed her by the hair and pulled her head down and drove away with her. *Id.* He said, "I want you to know that I am a bad man and I will kill you. You can live through this, but you have to do exactly as I say." *Id.* She responded, "Okay." *Id.*

He drove her to a nearby town where he brutally raped her. *Id.* at 78-91. He robbed her and put her in the trunk of her car. *Id.* Eventually, he put her back in the passenger seat. *Id.* When he got out of the car momentarily, she took a spare key from her glove box, jumped into the driver's seat, and drove away. *Id.*

Later that day, Casey fled to West Virginia where he kidnapped and raped a five-year-old girl. R. 62 at 3. He was apprehended after a high-speed chase ended in an accident. *Id.* at 3–4. Casey is now serving a life sentence at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky, for these crimes. *Id.* at 4.

Two months before this incident, Walmart fired a security company that patrolled the parking lot where Casey assaulted and abducted Whitt. R. 64, Ex. 3 (email setting termination effective date for October 26, 2006). The South Williamson Walmart store opened in 2000 and at least as early as 2003 had a security company working on site. R. 62, Ex. E ("Montgomery Dep.") at 9, 34, 39. From October 2005 to October 2006, Integrity Security provided security services at the South Williamson, Pikeville, Hazard, and Paintsville stores. R. 64, Ex. 2 ("Pennington Dep.") at 8–9, 32–33. Security guards worked at these stores from about 6:00 p.m. or 7:00 p.m. until daylight. *Id.* at 10-11. On a regular night, one security guard was on duty at each store and a "rover" went from site to site. *Id.* at 11, 14. Among other things, the security guards performed roving patrols, where they drove down the parking lot aisles in a marked security vehicle that had a yellow flashing light on top. *Id.* at 10-11.

In 2006, Shannon Harville ("Harville"), the Market Asset Protection Manager for the region including the South Williamson store, contacted Walmart home office employee Don Walker ("Walker") about the quality of Integrity's performance. R. 62, Ex. G ("Harville Dep.") at 41–44. After Harville voiced his concerns to Walker about his dissatisfaction with Integrity, Harville got the crime statistics for the area and Walker gave Harville authorization to eliminate the security services. *Id.* at 44–45. On September 26, 2006, Walmart sent Integrity a letter

3

providing thirty-days notice of its termination of the South Williamson security services. R. 64, Ex. 3 at 2. Walmart did not hire a company to replace Integrity. Harville felt the store's other security measures, including cameras on top of the store in plain view and lighting to illuminate the parking lot, were sufficient. Harville Dep. at 23-25.

On March 26, 2007, Whitt filed her suit in Pike Circuit Court, seeking damages for her injuries from Walmart and other parties. R. 1, Ex. 2. Specifically, she alleged that Walmart failed to maintain its premises in a reasonably safe condition and proximately caused her severe injuries. *Id.* ¶¶ 15–16. On August 13, 2007, Walmart removed this action after the other defendants were dismissed. *See* R. 1. On March 17, 2008, Walmart filed a third-party complaint against Casey in the event that it was found liable. *See* R. 18. Whitt has not asserted any claims against Casey so he is only a party to this litigation as a third-party defendant.

On January 2, 2009, Walmart filed a motion for summary judgment, R. 62, to which Whitt responded, R. 64, and Walmart replied, R. 65. On February 18, 2009, the Court held a hearing on the motion. *See* R. 100. After the motion was taken under advisement, the Court denied it without prejudice so the parties could have additional time for discovery and provide supplemental briefing. *See* R. 70. On December 31, 2009, Walmart filed a brief to supplement and to reinstate its motion for summary judgment. R. 96. Whitt filed a response to that brief, R. 97, to which Walmart replied, R. 98.

## DISCUSSION

Whitt alleges that Walmart's negligent security in its parking lot caused her injury. However, her claim fails on its first step. She did not establish that Casey's crime on Walmart's

parking lot was foreseeable. Thus, Walmart had no duty to prevent his crime and her claims must be dismissed.

Because duty is considered a question of law in Kentucky, the Court must resolve whether Walmart owed a duty to Whitt. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). Generally, "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Lee v. Farmer's Rural Elec. Coop. Corp.*, 245 S.W.3d 209, 212 (Ky. Ct. App. 2007) (quoting *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)). This universal duty of care extends to the premises of a store, where a store owner has "an affirmative duty to make the premises *reasonably* safe for use by guests and invitees." *Adkins v. Ashland Supermarkets, Inc.*, 569 S.W.2d 698, 699 (Ky. Ct. App. 1978) (emphasis added). More precisely, Walmart had to protect Whitt from the reasonably foreseeable criminal acts of third-parties. *See Waldon v. Housing Auth. of Paducah*, 854 S.W.2d 777, 779 (Ky. Ct. App. 1991); *Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270, 271 (Ky. 1958) (recognizing that a business owner "has the legal duty to use reasonable care to protect his patrons from harm"). Consequently, the critical question in this case is whether Casey's actions were foreseeable. *See Pathways*, 113 S.W.3d at 89 ("'The most important factor in determining whether a duty exists is foreseeability.'" (quoting David J. Leibson, Kentucky Practice, Tort Law § 10.2 (1995))).

Without question, Casey horrifically assaulted and abducted Whitt from Walmart's parking lot. But Whitt has not shown that the crime was foreseeable to Walmart. *Pathways*, 113 S.W.3d at 90; *see also Mitchell v. Hadl*, 816 S.W.2d 183, 186 (Ky. 1991) ("[P]roper application

5

of negligence law requires courts to view the facts as they reasonably appeared to the party charged with negligence."). Without that demonstration of foreseeability, there is no duty. In other words, the Court cannot conclude that "the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Sheehan v. United Serv. Auto. Ass'n*, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996) (citation omitted).

I.   **Evidence of foreseeability**

While the Kentucky Supreme Court has not spoken on what type of evidence would make violent crime in a store's parking lot foreseeable, federal district courts applying Kentucky law provide guidance. In such cases, those courts considered both criminal activity at the premises and criminal activity in the general vicinity. *See, e.g., Grisham v. Wal-Mart Stores, Inc.*, 929 F. Supp. 1054, 1057-58 (E.D. Ky. 1995) (finding that assault was not foreseeable based on data from the same premises or the general vicinity). Like *Grisham*, other courts outside the Sixth Circuit have applied similar tests. For example, applying Missouri law, the Eighth Circuit stated that:

> [A]n offense is reasonably foreseeable and a duty arises under circumstances where prior reports of criminal activity or other similar acts on or near the site are sufficient in number, sufficiently similar to, and sufficiently close in time to the immediate offense to place a business on notice of the need to protect its invitees from that general type of risk.

*Liszewski v. Target Corp.*, 374 F.3d 597, 599 (8th Cir. 2004) (citing Missouri case law). Here, there is no evidence of any similar criminal activity on or near the South Williamson parking lot. As a result, under the standard applied in *Grisham* and *Liszewski*, Casey's offense was not

reasonably foreseeable.[1]  In the extended discovery period, Whitt was permitted to also consider the criminal activity in the surrounding region from 11 other "similarly situated" stores.  *See* R. 87.  However, she cited none of that evidence in her response.  *See* R. 97.  The Court's analysis is limited to the evidence in the record.  And none of it supports a conclusion that Casey's crime was foreseeable to Walmart.

Whitt argues that using *Grisham* as a framework for the foreseeability analysis is incorrect.  She asserts that the Kentucky Supreme Court has since broadened its notion of foreseeability in *Pathways* when it adopted the Restatement (Second) of Torts §§ 289(a) and 290. 113 S.W.3d at 90.  It is true that *Grisham* is only persuasive authority since it comes from a federal district court, and *Pathways* is binding authority since it is an opinion of the Kentucky Supreme Court on its state law.  Nonetheless, Whitt is mistaken regarding the holding in *Pathways*.  *Pathways* adopted the Restatement (Second) of Torts § 290, which states that an actor must know the "qualities and habits of human beings" when determining whether the actor should recognize that his conduct involves a risk.  *Id*.  But that is not the same as Whitt's argument that any human habit, in this case the habit of criminals like Casey, is foreseeable conduct.  Surely, the Kentucky Supreme Court did not intend such a broad expansion of the foreseeability test.  Otherwise, a store owner would have to protect against every single human's

---

[1]Some courts have held that stores do not have a greater duty to protect their patrons simply because the stores are located in a high-crime area.  *See Grisham*, 929 F.Supp. at 1057 n.2 (collecting cases to show some states do not consider evidence of crime in the general vicinity). As explained below, South Williamson and the area surrounding the Walmart was a low-crime area.  Regardless of whether the crime in the general vicinity is considered, Casey's crime was not foreseeable.  Thus, the Court does not need to take a position on this split in authority to resolve this case.

habits—not just the foreseeable ones.

Moreover, *Pathways* offers little guidance on whether Walmart owed a duty to prevent Casey's crime since the facts of that case are quite different. There, the defendant placed the plaintiff in a boarding home where she was sexually assaulted. *Id.* The Kentucky Supreme Court concluded that it was foreseeable that the plaintiff was at risk since she was placed in a boarding home that did not meet the Commonwealth's health and safety standards. *Id.* The boarding home also had previously been ordered to cease its operations. *Id.* at 91. The defendant had a duty to be aware of the conditions of the boarding homes where it placed the plaintiff. There is no analogous regulation on what the Commonwealth requires for parking lot safety. The facts of this case are far too different for *Pathways* to serve as a meaningful guide in this case's analysis.

Whitt further criticizes the use of *Grisham* because she believes it leads to illogical results. R. 97 at 7. Whitt illustrates her point with a hypothetical. She states that if the Pikeville Walmart had 20 "abduction, rape and murder incidents" in its parking lot, this evidence would not be considered under *Grisham* since Pikeville is more than five miles from South Williamson. *Id.* That hypothetical is a red herring for two reasons. First, Whitt has not presented any such evidence of criminal activity. If she had, that hypothetical might have some relevance to this case. Second, the Court *did* permit Whitt to cite such evidence. Specifically, Whitt could review the criminal activity at 11 other Walmart stores, including its Pikeville location. *See* R. 87. If such evidence existed, Whitt could have cited it in her briefs; and unlike the Court in *Grisham*, this Court would have considered it relevant. Whitt chose not to present any of that evidence in

8

her response, presumably because it did not support her position that Casey's crime was foreseeable.

## II.     Criminal activity at the parking lot

There is no evidence in the record of any similar criminal activity at the Walmart parking lot before Whitt was attacked in December 2006. Normally, that would indicate crime was not foreseeable at the parking lot. But a key factual wrinkle in this case makes most of that evidence unhelpful. From at least 2003 until October 2006, Walmart had security in place that performed roving patrols. Montgomery Dep. at 9, 11, 34, 39. Walmart is correct that similar crime did not occur in the parking lot at that time. R. 62 at 5-8. The evidence of what happened when Walmart did have a third-party perform roving patrols might be relevant if the security company prevented attempted assaults or violent crimes. In that instance, it would be foreseeable that violent crimes would occur at the parking lot with less security. However, there is only one incident of robbery that occurred while the third-party security company was hired. R. 62, Ex. B ("Harris Dep.") at 176-77. That incident is insufficient to show that an assault and abduction were foreseeable crimes.

Still, the deterrent effect of the roving patrols cannot be ignored. As a result, in this case, it is more sensible to look at the situation as if Walmart was starting a new store in South Williamson in October 2006, when the security company was fired. R. 85, Ex. A at 5-6. In both situations (when Walmart opens a new store or it modifies its security at an existing store), Walmart would have to determine the required security to prevent foreseeable crimes. There would likely be little relevant data from the parking lot itself to make this decision. In a new

store, there would be no data since the parking lot would be new. In an existing store, as the case was here, the data has little meaning since the previous security regime may have deterred crime with its presence alone. Walmart, in both scenarios, would have to look to data beyond what happened at that particular parking lot to decide what crime was foreseeable. That is precisely what the Court must do here in deciding whether Casey's crime was foreseeable.

Likewise, the fact that Walmart removed security two months before Whitt was attacked does not affect whether the attack was foreseeable. A previous security measure does not change the duty of a store owner to keep his store premises safe. *See Liszewski*, 374 F.3d at 601 ("Nor in our view would sound public policy permit the inference Plaintiff apparently would have us draw that Defendants' employment of security guards means Defendants knew or should have known criminal attacks were to be expected." (quoting *Miller v. S. County Ctr., Inc.*, 857 S.W.2d 507, 512 (Mo. Ct. App. 1993))). It is to society's benefit when stores employ security even though the law does not require it. And, of course, the Court does not want to discourage robust security. More importantly, previous security cannot demonstrate that Casey's crime was foreseeable. In other words, Walmart may have had the extra security as a precaution or by mistake. The security before Whitt was attacked does not indicate that Casey's acts were foreseeable. There is no evidence that the security company was hired because Walmart found that crimes such as Casey's were foreseeable. *See* Montgomery Dep. at 34 ("Really don't know why they were hired."). If there was evidence to that effect, the hiring of security might show that the crime was foreseeable.

Since there is no meaningful evidence of criminal activity at the parking lot before

10

December 2006, the foreseeability inquiry must rest on evidence of criminal activity in the general vicinity and at "similarly situated" Walmarts.

## III.     Criminal activity in the general vicinity

To measure crime in an area, the experts of both parties recommend the CAP index. R. 62, Ex. D ("Groussman Exp. Rep.") at 8; Harris Dep. at 110. The CAP index tells businesses what the crime risk is in a certain area. Groussman Exp. Rep. at 8. On the CAP index scale, the national average for violent crime is 100. *Id.* South Williamson is at 65 for violent crime on the CAP index, about two-thirds the national average.[2] *Id.* Given the low risk of violent crime in South Williamson, it was not foreseeable that violent crime would occur at Walmart's parking lot.

In response, Whitt points out the CAP index for rape in South Williamson was 144. R. 64, Ex. 5 ("Grousmann Dep.") at 128. While that shows that the risk of rape is 44% higher in South Williamson than nationally, that index alone is not sufficient to show that Casey's crime was foreseeable. Whitt did not provide any context for that index. It could relate to date rape which would not make an abduction in a Walmart parking lot foreseeable. Whitt needed to state what makes up the rape index for it to be persuasive evidence here. She did not. Moreover, Walmart pointed out that the 144 rating is merely a prediction of the likelihood that a rape would occur at the address of the South Williamson Walmart, based on demographic information and crime history. R. 100 at 28-30. However, there never has been a rape at the Walmart location.

---

[2]Whitt's expert, John Harris, says the CAP index for South Williamson is lower than 65. He claims it is 64. Harris Dep. at 109. Still, the Court will apply the higher crime rate of 65.

*Id.* Such a generalized statistic cannot impose a duty on Walmart. Further, Walmart considered crime statistics from the Kentucky State Police and those numbers indicated that third-party security was not necessary. Harville Dep. at 44-47, 81-86.

 At the hearing, Whitt argued that the crime was foreseeable because it was early in the morning. R. 100 at 4-8. Whitt mentioned a general notion that bad things happen at night. *Id.* This goes too far and would make Walmart an insurer of all dangers. *Cf. Adkins*, 569 S.W.2d at 699. Just because a store is open at around 6:00 a.m. does not make it foreseeable that a patron will be assaulted or abducted in its parking lot. Whitt failed to bring evidence forward to show that crime at store parking lots was more likely during the early morning hours than during the day to support this argument.

 Whitt argues that Casey's crime was foreseeable because of a 1991 murder that apparently occurred in the parking lot of a K-Mart in South Williamson. R. 97 at 7-8. Whitt failed to attach any evidence to support this argument and instead states it as fact in her response brief. She attached the affidavit of Teresa Childers, but that only states that the K-Mart was less than a quarter mile from the Walmart at issue. R. 97, Ex. 3. Whitt needed to cite evidence that the murder occurred for the Court to consider it as part of the foreseeability analysis. She did not. Even if the Court did consider the 1991 murder, it was far too outdated and isolated an event to make a crime in 2006 foreseeable. Things can and do change in 15 years. There is no evidence one way or another to make this 15 year-old crime relevant.

 In short, there is no evidence to impose a duty on Walmart because of crime in the general vicinity.

**IV.     Criminal activity at similarly situated Walmarts**

Whitt had the opportunity to take discovery on "crime at Wal-Mart stores similarly situated to the South Williamson store." R. 70 at 2. In fact, Magistrate Judge Edward Atkins ordered Walmart to produce data from its stores in market 173, which covers the South Williamson store and 11 others in the surrounding cities. R. 87 at 3-4. Because of that order, Walmart had to produce: reports of criminal activity in market 173 parking lots, a list of civil actions filed against market 173 stores for third-party criminal activity, and memoranda or correspondence related to security at market 173 stores. *Id.* at 4. Judge Atkins limited this to the five-year period before Whitt was attacked in December 2006. *Id.* Whitt cited none of this evidence in her response to Walmart's supplemental memorandum. *See* R. 97. The foreseeability analysis is limited to what is in the record. And this record is practically empty. Walmart could not have foreseen Whitt's tragic injury or the need for roving patrols based on criminal activity at similarly situated stores, like those in market 173.

Whitt could have demonstrated what other retailers in the area did in 2006 for security. *See* R. 85, Ex. B. at 95 (Walmart official stating that Walmart considers, among other things, what other retailers in the area are doing for security). If every other store in market 173 had hired roving patrols, that might suggest a reasonable store owner would hire roving patrols in South Williamson. But there is no evidence on what stores in market 173 felt was needed for the *reasonable* security of their patrons.

Instead, Whitt appears to argue that Walmart should have foreseen such a crime because its parking lots around the country have been places of criminal activity. *See Doe v. Wal-Mart*

13

*Stores, Inc.*, 558 S.E.2d 663, 678–79 n.1 (W. Va. 2001) (Starcher, J. concurring) (collecting cases involving crimes that occurred in Walmart parking lots). This extends the foreseeability inquiry too far. If Whitt's rationale was adopted, a national brand like Walmart would be subject to a greater burden because it has over 3,000 stores in many locations. *See* R. 100 at 32. The crime in other areas only shows that violent crime was possible at South Williamson—not that it was foreseeable. Whitt needed to show South Williamson's similarities with these other areas. Whitt mentions that the crimes listed in *Doe* are from places with "similar demographic[s] and geographic areas" to South Williamson. R. 64 at 8. But Whitt fails to show how the places have similar demographics. Though they may have similar populations and some are relatively close to South Williamson, there is no evidence, for example, that those places had a CAP index as low as South Williamson's.

Moreover, all of the crimes cited in *Doe* involve crimes from before 2002 and many are from before 2000. Walmart implemented the security structure at issue in October 2006. Evidence from before 2000 would not put Walmart on notice that in 2006 a violent crime was foreseeable in South Williamson. Surprisingly, Whitt cites *Schweitzer v. Wal-Mart Stores, Inc.*, 861 So. 2d 747 (La. Ct. App. 2003), and *Spencer v. Wal-Mart Stores, Inc.*, 203 F. App'x 193 (10th Cir. 2006), to show that similar crimes also occurred closer in time to 2006. But both cases cut against Whitt's position. In *Schweitzer*, the court found that Walmart did *not* have a duty to use heightened security measures because: (1) no crime had been committed in the parking lot and (2) a police chief testified that the area had low crime. *Id.* at 751-52. Similarly, the Tenth Circuit in *Spencer*, applying Oklahoma law, concluded that Walmart had no duty to prevent a

patron from driving his car into the plaintiff, another patron. 203 F. App'x at 194. While *Schweitzer* and *Spencer* are more recent than *Doe*, the courts in each of these cases actually made findings on duty that favored Walmart—not the respective plaintiffs. Also, Whitt has not shown how the crimes in *Schweitzer*, a Louisiana case, and *Spencer*, an Oklahoma case, would make crime foreseeable in South Williamson, Kentucky.

Whitt cites other evidence to make her point that national standards should apply when it comes to Walmart security. Whitt points to a security study that a Walmart executive, Dave Gorman, led in 1994 at some Florida stores. R. 64, Ex. 8. In his article on that study, he noted that roving patrols were successful in reducing crime at a store in a high-crime area in Tampa, Florida. *Id.* at *2*. Based on that study, Whitt argues that Walmart had knowledge that crime was foreseeable in its parking lots. Whitt again makes the foreseeability inquiry too broad. Just because Walmart was on notice that a parking lot in Tampa required roving patrols does not suggest that South Williamson similarly needed roving patrols. The Tampa store had a track record of crimes. *See id.* There is no evidence of similar criminal activity in South Williamson stores or the city itself. Tampa is not comparable to South Williamson in any way. A South Williamson store owner cannot be judged by the security standards of Tampa (or the other cities mentioned in Gorman's article).

In addition, if Whitt's argument was followed, Walmart would be discouraged from writing articles like Gorman's. Whitt is effectively arguing that such a study changes security standards for all Walmart stores. That is not a sensible outcome. The test here is limited to foreseeability—not awareness of different security measures. Gorman's article shows that

15

Walmart was aware roving patrols might be necessary in some areas, but it does nothing to show they were necessary in South Williamson. Whitt needed to draw that connection but did not. Also, this study was performed in 1994—nearly 12 years before Walmart changed its security in South Williamson. Gorman's study is too outdated to demonstrate what was foreseeable in 2006. His study illustrates that crime in parking lots is possible and roving patrols can prevent some crimes. Those facts are undisputed and obvious.

Whitt attached a print out of a website that lists crimes in 2005 at various Walmarts across the country. R. 97, Ex. 2. Whitt argues that since at least five of them were violent crimes that occurred in cities with populations of less than 10,000, Casey's crime should have been foreseeable. R. 97 at 5. This argument fails. First, as Walmart points out, the list is inadmissible for two reasons. Whitt failed to authenticate the list. Fed. R. Evid. 901(a). Whitt needed to provide "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Instead, Whitt attached the list without any additional evidence to support the conclusion that the list is accurate. Further, the list is inadmissible hearsay. *See* Fed. R. Evid. 801. The website writers are summarizing what the news sources are purportedly reporting.

Even if the list was admissible evidence, it would be insufficient to show Casey's crime was foreseeable  The list only gives a broad description of the crime. For example, the list includes a robbery that allegedly took place at a Walmart in Hazard City, Kentucky in May 2005. Whitt needed to answer key questions about this crime for it to be persuasive evidence. Was the crime committed in Walmart's parking lot? Was the robber a stranger or did he know the victim? Are the crime statistics of Hazard comparable to South Williamson? Was the crime committed

by a third-party or a Walmart employee? What was the time of day of the robbery—broad daylight or early morning hours? Whitt could have taken discovery on the robbery in Hazard and the other crimes listed to answer such questions. She did not.

## V.     Other elements of the negligence claim

Since Whitt failed to establish that Walmart had a duty to prevent Casey's crime, the other elements of the negligence claim need not be addressed. The failure to establish the existence of any one of the elements is fatal to a negligence claim. *M & T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974) (citing *Illinois Central Railroad v. Vincent, Ky.*, 412 S.W.2d 874 (Ky. 1967)).

## CONCLUSION

Whitt suffered a great deal because of what Casey did to her in December 2006. The Court does not make this judgment lightly and wishes there was a way to compensate Whitt for her tragedy. Walmart, however, cannot be held liable. Kentucky law only requires store owners, like Walmart, to have in place security for foreseeable crimes. The Court cannot—and will not—put Walmart on the hook because a horrific but unforeseeable crime was committed on its premises. Walmart "is not an insurer for the safety of his patrons and is not required at his peril to keep the premises absolutely safe." *Adkins*, 569 S.W.2d at 699. In short, Walmart did not have a duty to prevent Casey's actions.

Accordingly, it is **ORDERED** as follows:

1)      The defendant's motion for summary judgment, R. 62, is **GRANTED**.

2)      The plaintiff's claims against Walmart are **DISMISSED WITH PREJUDICE**.

3)  Walmart sought indemnity, apportionment of fault and/or contribution from Casey if it was found liable to Whitt. *See* R. 18. Since Whitt's claims are dismissed, Walmart's claims against Casey are **DISMISSED WITHOUT PREJUDICE**.

4)  A Judgment shall be entered contemporaneously with this opinion in favor of Walmart.

5)  Any hearings and the jury trial previously set in this case are **SET ASIDE**.

This the 2nd day of April, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge